[Opinion delivered January 9, 1883.]

58  257
75  283

ANNA TEAL ET ALS. v. C. L. TERRELL ET ALS.

(Case No. 1252.)

1. CHARGE OF COURT AS TO TITLE.— When a party has, by the introduction of title papers in evidence, shown a connected chain of valid transfers to land from and under the sovereignty of the soil down to himself, except one link in the chain, which was supplied by undisputed heirship from one in whom title had vested, an instruction to the jury that such party has shown title to the land is not a charge upon the weight of evidence, but a proper charge upon the legal effect of uncontradicted testimony.

2. LIMITATION — TENANT IN COMMON. —When one enters upon land as a tenant in common, his claim of right to occupy it "in his own right" does not necessarily imply that he asserts right to the portion of the land occupied by him adversely to the rights of his cotenant; and no limitation will run in his favor-against his cotenant, except from a period when the claim to exclusive adverse possession on his part is clearly established.

3. DECLARATIONS.— Acts and declarations of a party in possession will be construed more strongly against him, when relied on by him against the claim of a tenant in common, than when relied on against one having no privity of title.

APPEAL from Victoria. Tried below before the Hon. H. Clay Pleasants.

Suit in trespass to try title, brought by Terrell and others, who claimed under Louisa Sevier, against Anna Teal and others, who claimed under Peter Teal, deceased. The defense was the plea of not guilty and the limitation of ten years.

The land in controversy was originally granted to John B. Sideck. The plaintiffs derived title under conveyances from Mrs. Sevier. The record of a suit between Mrs. Sevier and Mrs. Teal was in evidence, and Mrs. Teal, by her pleadings in that suit, admitted that Mrs. Sevier was the daughter of John B. Sideck, and the fact was also proven by parol.

In 1830 a grant of land, called the "square league," was made by the Mexican authorities to John B. Sideck. In 1834 a league was granted to him as a colonist, and this was called the "long league." It has its front upon the San Antonio river, within the front of the "square league," and runs back diagonally across it, as shown by the plat.

63. *a.* Mrs. Teal.    *c.* Terrell.    *d.* Sideck.    *e.* Sevier.

The parties to this suit, or those under whom they claim, had all been upon the land embraced by these grants since 1845 or 1846. In 1856 Mrs. Sevier and her husband sued Anna Teal, widow and administratrix of Peter Teal, in trespass to try title for the long league. Mrs. Teal answered, in substance, that John B. Sideck acquired the land sued for by the deeds (or grants) of 1830 and 1834, which two deeds embraced and covered the land in dispute; that in 1832 Sideck donated the land to Peter Teal and to his (Sideck's) daughter Louisa, the plaintiff in that suit. She also averred that Sideck adopted Peter Teal as his son and heir at law, and that at Sideck's death Teal was entitled to a child's part of his estate; and she prayed that Teal's title to the undivided half of the lands embraced by the deeds might be confirmed; and for partition between the heirs of Teal and Mrs. Sevier, one-half to each.

This suit in 1869 resulted in a decree allowing Teal's estate one-half of the square league, and one-half of that part of the long league which fell within the square league; but saying nothing about that part of the long league which might be found outside of the square league lines. The cause was carried to the supreme court, where the decree was affirmed, but the actual partition was not made till 1872. Up to the time of the survey for this partition, none of the parties knew where the lines of the square league crossed the long league; but Sevier testified that it was believed that Mrs. Teal's residence was within the limits of the square league. When the survey was made it was found that Mrs. Teal's house was outside of the square league, and upon the upper of the inner quarters of the long league, while the houses of the plaintiffs Terrell and Stevenson were found to be on that part of the square league which was set apart to Mrs. Teal. There were some negotiations, and Mrs. Teal proposed to buy the ground her house stood on, but Terrell declined to sell. There was no evidence of any claim on her part adverse to the tenant in common until after this time. In her testimony she said that Peter Teal claimed the land as the adopted son of Sideck, and that she knew nothing of the location of the back line of the square league until after the survey was made in the former suit. At the time the survey was made it seems that her *actual* possession was only her house, etc. She testified to a field used for more than ten years before the war, which field seems to have been partly within and partly without the square league; but she testified that it went down during the war.

This suit (which is for that part of the two inner quarters of the long league which lie outside of the square league) was commenced January 31, 1879.

The charge complained of will be found in the opinion. Judgment for plaintiffs.

*Lackey & Kleberg*, for appellants.

I. When title to land is not shown entirely by deed or other written evidence of title, it is error to charge the jury that a party has shown title to property in controversy. Gilkey *v.* Peeler, 22 Tex., 668; Rogers *v.* Broadnax, 24 Tex., 543.

II. The proof did not authorize the third instruction given, for there was no priority shown or claimed between the appellants and appellees.

III. The entry of one upon land, under claim of right thereto, as cotenant, is an adverse entry, if in fact such relationship did not exist, and was not recognized by the person who had the legal title; and if possession be continued under such entry for the period prescribed to bar the right of the real owner, then, under the statute of limitations, such possessor has title to the extent of his actual possession.

IV. An entry upon land by one claiming the same, but having no right thereto, accompanied with an actual possession of a part of the land, is an ouster of the owner to the extent of the actual possession; and where an actual ouster exists, limitation will run even in favor of a tenant in common against his cotenant. Tyler on Ejectment and Adverse Enjoyment, 83, 84; Freeman on Cotenancy and Partition, sec. 221.

V. An exclusive possession of a part owner of a common estate is, to the extent of the land embraced by it, as inconsistent with the common title as the occupation of the whole would be. Freeman on Cotenancy and Partition, sec. 228; Carpenter *v.* Webster, 27 Cal., 549.

VI. When the common right to enjoy a property, or any part of a property, held in cotenancy, is denied by the exclusive possession of one of the cotenants, limitation runs in favor of the possessor to the extent of his actual possession (Freeman on Cotenancy and Partition, sec. 228); *a fortiori* will the holding be adverse when by a stranger to the legal title.

VII. The statute of limitation operates upon a cause of action when in favor of one cotenant and against another, where the holding is adverse, to the same extent that it operates between persons who do not sustain to each other such relation. Freeman on Cotenancy and Partition, sec. 373.

VIII. When a party might maintain an action of ejectment without proof of ouster, then such a state of facts exists as constitutes

an adverse holding. Tyler on Ejectment and Adverse Enjoyment, 83, 84; 4 Mass, 418, 419.

IX. It is error to charge a jury that the possession of one tract of land by the owner of two tracts of land will limit the extent to which a person holding the other tract, adversely to the real owner, can claim by limitation, to the land actually possessed.

*Glass & Callender* and *A. B. Peticolas*, for appellee.

Willie, Chief Justice.— It is claimed by appellants that the court below should not have charged that the appellees had shown title to the land in controversy, but should have left that as a question of fact to be determined by the jury. The title of appellees was deraigned from the government, and every link of it but one was in writing. This link was the descent of the land from John Sideck at his decease to his daughter and heir, Louisa Sevier, which was proven by the clearest and most satisfactory testimony, and was not disputed on the trial. What the court did charge was but the legal effect of uncontroverted evidence, and there was no question in reference to it, to be passed on by the jury. The propriety of such a charge has been too frequently sustained by this court to require further comment. Hedgepeth v. Robertson, 18 Tex., 871; Mitchell v. De Witt, 20 Tex., 294.

Appellants also complain of the third instruction to the jury, viz.: "If the jury find, from the evidence, that the defendants were in possession of the land sued for, for ten consecutive years or more previous to the institution of this suit, but believe they were in possession claiming to be joint owners with the daughter of John B. Sideck, and not making an exclusive claim of title to the land, such possession could not be adverse to the plaintiffs in this suit, and therefore the defendants could recover no part of the land, and the jury should find for the plaintiffs the land sued for."

It is not urged that the law of the charge is not correct, but that the evidence does not authorize it. In this assertion we do not think appellants are borne out by the record. They claimed the land under Peter Teal, who was an adopted son of John Sideck. Appellees claimed under Mrs. Sevier, who was Sideck's daughter, and this land at Sideck's death descended to Teal and Mrs. Sevier as tenants in common. The only claim of right to settle and remain on the land that Peter Teal or these appellants ever made, down to the year 1872, was by virtue of their joint tenancy with Mrs. Sevier. Even this was disputed by her, and a suit was commenced in 1856 against Mrs. Anna Teal, as administratrix of Peter

Teal, to eject her from the premises. To this she pleaded her deceased husband's right as a tenant in common with the plaintiff in that suit, and sustained it in the courts of the country. She was decreed to be entitled to an undivided interest in the league, and partition was made by order of court between her and Mrs. Sevier. In that partition, which was made in 1872, the portion that fell to her did not include her improvements, and she declined to remove from them, and for the first time commenced to hold the lands in opposition to the rights of appellees, who had succeeded to the title of Mrs. Sevier. This was less than ten years previous to the commencement of this suit. It is true that it was stated in evidence by the appellants that Peter Teal, as well as themselves, held the land from the date of his settlement on it in 1845 in his own right; but so does any tenant in common, for this does not imply that he held it in his separate right, or exclusive of his cotenant. In fact she also states what this right was, viz., as adopted son of John Sideck. It was proved positively by Sevier that Teal and his wife, down to the decision of the suit brought by Mrs. Sevier, had always claimed an interest in the land because of this relation of adopted son. There never was any repudiation of the title of Mrs. Sevier by appellants till the date of the partition, and such repudiation must always clearly appear in order to give a cotenant the benefit of the statute of limitation; and acts and declarations of the party in possession are construed much more strongly against him than when there is no privity of title. Bailey v. Trammell, 27 Tex., 328. This court has denied the benefit of the statute of limitations to a cotenant in several cases where the proof of ouster on his part was much stronger than in the present. Gilkey v. Peeler, 22 Tex., 665; Flannagan v. Boggess, 46 Tex., 336; Alexander v. Kennedy, 19 Tex., 488.

We think, therefore, that the charge was fully warranted by the evidence. As the jury evidently found for the plaintiff under this charge, it is unnecessary to consider the one given by the court on the subject of the rights of adverse claimants, who are in possession of disputed land at the same time, to claim the benefit of the statute of limitations against each other. The jury found that there was no adverse tenancy for ten years between the parties to this suit, and hence this charge became unimportant.

· There is no error in the judgment, and it is affirmed.

AFFIRMED.

[Opinion delivered January 12, 1883.]

Judge STAYTON did not sit in this case.